# SUPREME COURT OF LOUISIANA,

### IN THE

## EASTERN DISTRICT, AT NEW ORLEANS,
## MAY, 1845.

---

PRESENT:

Hon. FRANÇOIS XAVIER MARTIN.
Hon. HENRY A. BULLARD.
Hon. ALONZO MORPHY.
Hon. EDWARD SIMON.
Hon. RICE GARLAND.

---

SUCCESSION OF JAMES LAWLER — CHARLES JAMES McKENNA, Appellant.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

*P. Maurian,* for the appellant.

*Livingston* and *Duvigneaud,* contrâ.

MORPHY, J. Charles J. McKenna has appealed from a judgment, dismissing his opposition to the account presented by the curator of the succession of James Lawler. He claimed to be a creditor of the deceased for the sum of $1,521 25, for which he had brought suit against the estate some time before, alleging that, for money loaned and advanced to Lawler, at different times, the latter did, on the 2d of February, 1843, make and sign a promissory note to his order, for said amount, payable six months after date, in presence of James McHugh, who signed

it as an attesting witness. He further alleged, that this note had been lost or destroyed, and was not in his possession, nor under his control; that he never disposed of or transferred the same, and that it was justly due and owing to him, but that he did not know what had become of said note, could not produce it, and that he therefore annexed to his petition a true copy of the same. To prove the existence and loss of the note, the attesting witness, James McHugh, was examined. He states, in substance, that he was McKenna's book-keeper, and transacted his business; that McKenna was a shoemaker, and kept a boot and shoe store, which was destroyed by fire on the 18th of March, 1843, between two and three o'clock in the morning; that on the 2d of February, 1843, he lent to Lawler $200, which being added to several other small notes the deceased owed him, made up the $1,521 25, for which a note was drawn by Lawler, which the witness was requested to sign as a witness; that the papers of McKenna, among which was the note sued on, were in a small box, which, he thinks, was not saved; that he saw the box the night before the fire, in the store of the opponent; that the box containing the papers was on the side of the store which was consumed by the fire before it could be extinguished; that the books and some boots, shoes, and furniture were saved; that the box may have been taken away, but that he has not seen it since the night of the fire, &c. Patrick Gallagher testified, that about the end of January, or beginning of February, 1843, he saw the deceased and McKenna in conversation, at the store of the latter; that he saw McKenna put on the counter some money (silver and bank notes), to the amount of about one hundred dollars; that Lawler took the money and immediately executed a note, and called upon James McHugh to sign it as a witness, which McHugh did; that McKenna and Lawler having then left the store together, McHugh showed the note to a friend of witness', who was present, named *O'Kirnans*, telling him, " here is a note of pretty good amount;" that witness then looked at it, and saw that it was a note for fifteen hundred dollars, or something over that amount, &c. Another witness, *Owen Kernan*, who from his name would appear to be the person alluded to by the preceding witness, states,

that at the end of January, or beginning of February, 1843, he saw Lawler and McKenna in the store of the latter, counting money on the counter—about $20 in paper and silver; that he did not see Lawler take the money, and does not know for what purpose it was placed upon the counter; and that he afterwards saw McKenna and Lawler go out of the store together. This witness does not state that any note was shown to him by McHugh, nor does the latter mention this circumstance in the very long and detailed account which he gave of all that passed in relation to the execution of the note, and its subsequent loss or destruction by fire. Smith, another witness, testified, that he saw Lawler sometimes in McKenna's store, and that he understood from the deceased that he had had some dealings with him; that, at the time he kept his store, McKenna had lent some money to witness, and then had the means of doing it, &c. The judge of the Court of Probates appears to have totally disbelieved these witnesses for the opponent, so far at least as they testified to the execution of the note sued on. The evidence renders it extremely probable, if not certain, that McKenna, by himself, or his clerk McHugh, did set fire to the store in which the note sued on is said to have been on the night of the fire. Several respectable witnesses say, that they would not believe McHugh on his oath, as, in their opinion, he perjured himself in the criminal court after a prosecution for arson against him was dropped, and he was permitted to become a witness for Charles McKenna, who was accused of the same crime, and who was afterwards tried in that court. The day after the fire, McKenna was arrested in the office of the Western Marine and Fire Insurance Company, where he had procured an insurance on his store. He there enumerated the losses he had sustained in consequence of the fire, and of a robbery which he said had been committed, and made no mention of this promissory note, which exceeded the value of his store, on which he had taken out a policy for $1200, which he never claimed of the underwriters. It is not shown that, at the time of the fire, or before the institution of his suit, many months after, McKenna ever communicated to any one the loss of this note, or ever claimed its amount of Lawler in his life time; and he gave notice of its loss in the

# NEW ORLEANS,

newspapers only about eighteen months after it is said to have occurred, and after he had become aware, by the curator's answer to his demand, that such an advertisement was necessary to enable him to recover. The books of the opponent, which were saved uninjured by the fire, were not produced as they might have been, to show that McKenna's book-keeper, and his principal witness, had made, at the time, entries of the loans of money to the deceased, and of the note he is said to have given in payment of such loans. The evidence, moreover, renders it improbable that the opponent had the means of lending such a large amount as that which he now claims. Under these, and other suspicious circumstances disclosed by the record, and the contradictory statements made by the opponent's own witnesses, we cannot say that the judge below was wrong in coming to the conclusion, that the note sued on, and pretended to have been lost, never had any existence.

*Judgment affirmed.*